IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-01285-RBJ-NYW

TAMARA DAVIES, as personal representative of the ESTATE OF JAMES DAVIES;

    Plaintiff,

v.

THE CITY OF LAKEWOOD, COLORADO, and its Police Department, *et al.*;

    Defendants.

_____

**PLAINTIFF'S MOTION TO LIMIT THE EXPERT OPINION TESTIMONY OF
WILLIAM SPENCE AND WILLIAM EVERETT
AND ALTERNATIVELY TO ALLOW SUR-REBUTTAL EXPERT TESTIMONY**
_____

    Plaintiff submits this Motion to Exclude and Limit Expert Testimony:

**Conferral Pursuant to D.C.COLO.LCivR 7.1(a):** Undersigned counsel has conferred with counsel for Defendants and was informed they object to the relief sought herein.

## Applicable Law

    The court is aware of the standards applicable under Fed. R. Evid. 702 and *Daubert*. Plaintiff thus incorporates the standards articulated by this court in cases such as *Blotcher v. Stewart*, 45 F. Supp. 3d 1274, 1278-79 (D. Colo. 2014).

## Argument

**I.    Neither Spence Nor Everett is Qualified to Opine Regarding the Psychological and Physiological Concepts in Their Reports**

    Both Spence and Everett express multiple opinions relating to the ability of Braley and Davies to perceive certain auditory and visual stimuli, as well as opinions regarding the ability of individuals to act in certain ways, perceive certain things, and remember

certain things, all of which are based on their understanding of various psychological and physiological concepts relating to attention, perception, and memory. *See* Spence Report at 6, 8-9, and 12-17, **Exhibit 1**; IRB Report at 1:32 and 2:73-78, **Exhibit 2**; Everett Report at 7-10 and 12-14, **Exhibit 3**. However, neither Spence nor Everett possesses the requisite knowledge, skill, experience, training, or education to express these opinions.

To qualify as experts, Spence and Everett must possess skill, experience, or knowledge in the "particular field" of psychology, or psychology must fall "within the reasonable confines" of their expertise. *See Conroy v. Vilsack*, 707 F.3d 1163, 1168-69 (10th Cir. 2013). "[T]he witness is 'required to possess' such skill, experience or knowledge in that particular field as to make it appear that his opinion would rest on substantial foundation and would aid the trier of fact in his search for truth.'" *Markham v. BTM Corp.,* 2011 WL 1231084, at *16 (D.Kan. 2011). When an expert's opinions fall outside their expertise, such opinions should be excluded. See *KNAPP Logistics & Automation, Inc. v. R/X Automation Sols., Inc.*, No. 14-CV-00319-RBJ, 2015 WL 5608124, at *1-2 (D. Colo. Sept. 24, 2015).

Both Spence and Everett have been disclosed as experts relating to "behavior" and Everett has been specifically disclosed as an expert in "behavioral science." *See* Braley Rebuttal Disclosure at 2, **Exhibit 4**. Everett describes the area of "behavioral science" as one that "encompasses psychology, motor performance, perception, cognition, decision-making, physiology to some extent, human performance." Everett Depo at 84:24-85:5, **Exhibit 5**. Spence's testimony encompasses the articulation and application of scientific principles. *See* Spence Depo at 132:22-133:15, **Exhibit 6**. However, both Spence and Everett admit they are **not** experts in kinesiology, biomechanics, anatomy, chronometry, neuroscience, cognitive psychology or psychology. *See* Everett Depo at 76:3-77:15, **Exhibit**

2

**5**; Spence Depo at 61:10-63:5, **Exhibit 6**. Spence further admits he is **not** an expert in memory or perception. *See* Spence Depo at 19-24, **Exhibit 6**. In fact, Spence only holds himself out as an expert in decision making in use of force situations, police practices, and blue on blue shootings. *See id.* at 64:21-65:23, **Exhibit 6**. Everett admits he is also **not** an expert in cognition, motor movement, statistics, research design, or research methodology. *See* Everett Depo at 84:24-85:20 and 93:1-13, **Exhibit 5**. In fact, Everett testified that "behavioral science" is based on scientific principles and that his testimony regarding such is based on scientific principles, *see id.* at 113:14-19 and 114:23-115:6, but admits that he is not an expert in "discrete behavioral sciences," *see id.* at 84:24-85:20, which is the area that he was disclosed as an expert regarding.

Neither Spence or Everett have published any articles, peer reviewed or otherwise, in the field of cognitive psychology or regarding the psychological effects that they opine about. *See* Spence Report at 2, **Exhibit 1**; Everett CV at 3-6 (detailing trainings and a few articles, but none peer reviewed, and trainings were only "published" in the program), **Exhibit 7**. Such a lack of publication indicates the absence of qualification in the subject areas at issue. *See Milne v. USA Cycling, Inc.*, 575 F.3d 1120, 1133–34 (10th Cir. 2009).

Both Spence and Everett have Bachelor's Degrees in Law Enforcement, but lack any education or licensure in psychology, physiology, or any field relevant to their opinions relating to the applicability and effects of the scientific concepts they articulate and apply. *See* Everett CV (lacking any education, licensure, or professional affiliation relating to psychology, physiology or any scientific field), **Exhibit 7**; Everett Depo. at 51:16-53:15 (no formal education in psychology, physiology, or other relevant fields), **Exhibit 5**; Spence Report at 1-2 (description of experience and education lacks any reference to any

3

psychological, physiological, or scientific field), **Exhibit** 1; Spence Depo. at 28:15-29:5 (recalls two psychology courses from **undergraduate** degree in 1977), **Exhibit 6**.

Plaintiff anticipates that Spence and Everett will contend that their certification through the Force Science Institute as a "Force Analyst" provides qualification to opine regarding the psychological and physiological concepts. However, this certification is a basic course that does not provide sufficient education in psychology or physiology to qualify a participant as an expert in these scientific fields. *See* Spence Depo. at 101:18-102:7 (no university program for "force science," no license, and no state certification), 103:2-104:1 (person need only take a **40 hour course** and make a "presentation," and there is **no prerequisite training or education**), **Exhibit 6**.

Everett also contends that his qualification is derived from his "directed self study" after he took the analyst course. *See* Everett Depo. at 88:7-24, **Exhibit 5**. However, this "directed self study" was not through any accredited school, did not ascribe to a particular curriculum, did not result in any degree or certification, was only loosely guided by the CEO of Force Science Institute, did not require any dissertation or test. *See id.* at 71:11-76:2.

Spence and Everett apply general principles they derived from a few textbooks, but lack sufficient training and education to reliably and helpfully apply such principles. *See Schmidt v. City of Bella Villa*, 557 F.3d 564, 571 (8th Cir. 2009) (police officer not qualified to offer expert testimony regarding, *inter alia*, "the psychological impact of custody on arrestees."); *see also Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 969-70 (10th Cir. 2001). Similar to the excluded expert in *U.S. v. Jacques*, 784 F. Supp. 2d 59, 62 (D. Mass. 2011), each is "simply an intelligent man, well read in the area, who has written a bit on the general topic … and who holds an opinion on the topic," and "[t]hat is not enough."

4

## II. Opinions Regarding Scientific Concepts Are Insufficiently Reliable

### a. *Spence and Everett's Opinions Regarding Selective Attention and Inattentional Blindness are Unreliable*

First, as Everett admits, there is no way to determine whether a person is affected by selective attention, as opposed to a lapse of memory or even deceit. *See* Everett Depo. at 218:19-221:17, **Exhibit 5**. Braley reported that he did not recall hearing Davies' radio transmissions and did not see certain things at the scene; as Everett admits, a possible explanation for both of this is that Braley either did not later recall the information or that he failed reported what he perceived. *Id.* Spence acknowledges that Braley's inability to recall the radio transmissions later may be attributable to a short-term memory problem, rather than selective attention, but that he is not a memory expert. *See* Spence Depo. at 211:18-212:8, **Exhibit 6**. Because there is no way to determine whether someone has been affected by selective attention or inattentional blindness, as opposed to a experiencing a memory lapse or engaging in deceit, there is **no known error rate** for such opinions and the occurrence of selective attention or inattentional blindness is pure speculation. *See Student Mktg. Grp., Inc. v. Coll. P'ship, Inc.*, 247 F. App'x 90, 102 (10th Cir. 2007) (expert opinions with "unknown error rate" inadmissible); *see also Dodge v. Cotter Corp.,* 328 F.3d 1212, 1222 (10th Cir. 2003) ( "expert opinions 'must be based on facts which enable [the expert] to express a reasonably accurate conclusion as opposed to conjecture or speculation'").

Second, Spence and Everett both draw conclusions that are not supported by the research and studies they rely on. For instance, Everett specifically cites to studies regarding the effects of distractions, such as conversing on a cell phone, on a person's driving abilities and reaction time. *See* Everett Report at 13 (citing Shomstein & Yantis

5

2004), **Exhibit 3**; *see also* Spence Report at 6-9, **Exhibit 1**. However, neither the study cited by Everett nor any other study relied on by Spence, supports their proposition that the task of driving effects the ability of a person to attend to auditory information. As Dr. Fournier notes, the study relied on by Everett "did NOT examine whether auditory stimuli was 'blocked out' while attending to visual stimuli—as implied by Everett…There were no behavioral measures indicating whether unattended info was more difficult to detect/discriminate." Fournier Declaration and Report at 32, **Exhibit 8**; *see also* Shomstein and Yantis (2004), **Exhibit 9**. Further, none of the studies cited or relied on deal with expert or practiced drivers, police officers, or three way police radios. *See* Spence Depo. at 200:20-202:9 and 209:24-210:22, **Exhibit 6**; Everett Depo. at 218:4-18, **Exhibit 5**. Consequently, there is no fit between such opinions and this case. Rule 702 demands that expert opinions be relevant, that is, that the testimony "fit" the facts of the case. *In re Breast Implant Litigation*, 11 F.Supp.2d 1217, 1223 (D.Colo.1998). The proffered evidence must speak clearly and directly to an issue in dispute in the case. *Id.*

Third, Spence and Everett attempt to apply and opine on general psychological and physiological principles, but fail to consider the intricacies of these concepts and related principles. Spence cites to and attempts to apply the "Colavita Visual Dominance Effect," which shows a brief period of visual dominance when responding to bimodal stimuli, *i.e.* both auditory and visual stimuli. *See* Spence Report at 16, **Exhibit 1**; IRB Report at 1:32-1:33, **Exhibit 2**. However, the Colavita Visual Dominance Effect only occurs in situations where the visual stimuli appears first and where the auditory and visual stimuli are approximately 50-200 milliseconds apart. *See* Fournier Report and Declaration at 27-29, **Exhibit 8**. When the auditory stimuli occurs first, the effect disappears. *See id.* Here,

Braley heard Davies' voice first and there was more than 200 milliseconds between the visual stimuli to either Braley or Davies and the auditory stimuli, and consequently Spence's opinion is neither sufficiently reliable nor a proper "fit" with the facts of this case. Similarly, in applying the concept of selective attention to explain why Braley does not recall Davies' radio transmission, both Spence and Everett ignore the established principle that **interest** dictates attention, not what they determine to be "relevant" to Braley's tasks. *See id.* at 20-23 and 29-30. Spence and Everett also ignore the effects of experience and expertise on an officer's abilities, perception, and actions. *See id.* at 25 and 34-35.

### b. *Spence's Opinions Regarding Blue on Blue Shootings Are Unreliable*

Spence opines that "Agent Davies' position and behavior made it more likely he would be misidentified as a suspect rather than identified as a police agent." *See* Spence Report at 12, **Exhibit 1**. Spence improperly bases this opinion on (a) the results of an unpublished, non-peer reviewed, survey study that he co-authored and (b) a non-peer reviewed article in the online publication PolcieOne.com. *See id.*

The study co-authored by Spence was a survey study that sought anecdotal responses from police officers to questions asking them to speculate on (a) how an undercover or off duty officer might identify themselves as a police officer in a given hypothetical, (b) the orders they were "likely" to give in the hypothetical, and (c) placing themselves in the role of an off-duty officer and what they might do in the hypothetical. *See* Draft Copy of "Analysis of Mistaken Identity" at 17 (Fig. 1 is a copy of the survey), **Exhibit 10.** From this study, Spence derived four bullet points that he included in his report as "the most effective things plain-clothed officers can do to assure their own safety when uniformed officers arrive upon the scene…" Spence Report at 12, **Exhibit 1**. Further,

7

Spence also opines that off-duty and plain-clothes officers are more likely to be shot by police "due to" three factors that he derived from his review of the responses to this study. *See id.* Spence also states that he "learned that pattern recognition is a key factor in high stress decision-making" from this survey study. *See id.* Finally, Spence opines that, based on what he learned from this study and the factors he derived therefrom, Davies' actions fit the pattern derived from the speculative responses to his survey, Davies failed to do the things that officers speculated may be beneficial for a plain-clothed officer to do, and thus "a reasonable officer faced with this set of circumstances would have considered Agent Davies to have be [sic] a civilian posing an imminent and deadly threat." *See id.* at 13.

As Spence admits, his study is not published and has not been through peer review. *See* Spence Depo. at 77:12-78:5, **Exhibit 6**. Thus, there has been no review of or confirmation of the results of the study or the methodology it used. *See Miller v. Pfizer, Inc.*, 196 F. Supp. 2d 1062, 1073 n.32 (D. Kan. 2002) *aff'd,* 356 F.3d 1326 (10th Cir. 2004) ("the lack of peer review means that the Court simply does not have the assurance of reliability that this *Daubert* factor would normally provide"). There were problems with the questions in the survey and categorization of the multiple responses. *See* Spence Depo. at 74:1-10, **Exhibit 6**. The study itself also notes that the study was "prone to experimenter bias," and lacked "experimental manipulation." *See* Draft Copy of "Analysis of Mistaken Identity" at 10, **Exhibit** 10**.** Further, the study noted that "**[p]articipant responses on the survey may be different than actual performance."** *Id.* In other words, the speculative responses by the officers **may not reflect what actually occurs**. In addition to being speculative, such testimony would confuse and mislead the jury in violation of Rule 403.

The most glaring problem with Spence's study is that it was explicitly limited to analyzing the actions of "undercover or off-duty officers." *See id.* at 4. In fact, the hypothetical only related to "plainclothes" officers, and the survey questions only related to undercover and off-duty officers. *Id.* at 17. In this case, it is undisputed that Davies was in full uniform when he was shot and killed by Braley, and thus there is no "fit.".

Dr. Fournier notes multiple problems with Spence's survey study. *See* Fournier Declaration and Report at 15-16, **Exhibit 8.** In particular, Spence attempts to draw a causal link between the factors and pattern that he identified through his survey and Davies' actions. *See* Spence Report at 12-13, **Exhibit 1**. However, his survey study is only correlational and "does not allow us to make cause-effect conclusions." *See* Fournier Declaration and Report at 15 and 24-25, **Exhibit 8**.

Finally, Spence's citation to the opinion piece by William Lewinski on PoliceOne.com is inappropriate, as this article is not peer reviewed, does not contain internal indicia of scientific reliability, and relies on flawed research. *See id.* at 25-26, **Exhibit 8**. Further, the article and opinions of Lewinski **only relate to plain-clothed officers**, not uniformed officers such as Davies. *See* Spence Report at 12-13, **Exhibit 1**.

### c. *Studies and Articles Relied on by Spence and Everett are Unreliable*

Everett cites to and relies on various research studies and articles that are either unreliable or do not stand for the proposition he asserts. *See* Fournier Declaration and Report at 5-16 and 19 **Exhibit 8**. Spence and Everett rely on several unreliable articles without citation. *See* Fournier Declaration and Report at 3, **Exhibit 8**. These articles are generally opinion pieces in non-peer reviewed publications that lack basic research methodology. *See id.* at 16-17.

9

**III.     Everett's Opinions Improperly Invade Upon the Judge and Jury**

In *Specht v. Jensen,* 853 F.2d 805 (10th Cir.1988), the court stated there is "a clear line between permissible testimony on issues of fact and testimony that articulates the ultimate principles of law governing the deliberations of the jury," the court found that by testifying regarding legal conclusions an expert "supplant[s] both the court's duty to set forth the law and the jury's ability to apply this law to the evidence." *Id.* While "an expert's testimony is proper under Rule 702 if the expert does not attempt to define the legal parameters within which the jury must exercise its fact-finding function," an expert cannot "direct the jury's understanding of the legal standards upon which their verdict must be based…" *Id.* at 809-810. "*Specht* was expressly directed to opinions of attorneys." *Luciano v. E. Cent. Bd. of Co-op. Educ. Servs.*, 885 F. Supp. 2d 1063, 1067 (D. Colo. 2012).

Here, it is clear that Everett's opinions fall within those expressly excluded by *Specht*, as he is an attorney who admittedly will offer his opinions regarding what the applicable law is, how this law should be applied to the facts of this case, and the conclusions that must be reached. Everett is an attorney who litigates civil rights cases under Section 1983, representing police officers and police departments. *See* Everett Depo. at 28:22-29:13, **Exhibit 5**. Everett explicitly states in his report that "[m]y analysis of Agent Braley's decision to use force is based on the standards enunciated in *Tennessee v. Garner*, 471 U.S. 1 (1985) and *Graham v. Connor*, 490 U.S. 386 (1989)." Everett Report at 11, **Exhibit 3**; *see also* Everett Depo. at 202:7-203:3 (explaining that the basis for his analysis in this case are the standards articulated in *Garner* and *Graham*), **Exhibit 5**. He testified that "[m]y opinion is that Agent Braley's use of deadly force complied with the standards articulated in *Garner* and *Graham*." Everett Depo. at 145:6-156:22, **Exhibit 5**.

10

He reached this overarching opinion when he "applied the principles that [he] know[s] of from *Tennessee v. Garner* and *Graham v. Connor*." *Id.*  He testified that his opinions on "use of force" are "based on [his] skills as a legal researcher to develop an understanding over time as to how courts have interpreted the standards for use of force." *Id.* at 112:22-114:22. As Everett further testified: "The standard is a constitutional standard. The standard authorizes officers to use deadly force in X circumstances," and "My opinion -- and it -- my opinion is that Officer Braley met that standard." *Id.* at 184:20-25. In determining that "[a] reasonable officer in Braley's circumstances would have concluded that the use of deadly force was objectively reasonable," Everett applied his analysis of the *Garner* decision and testified that "[i]t's **constitutionally unreasonable** to require officers to wait for someone to actually attempt to harm them," and that **police officers "are constitutionally permitted** to act when the circumstances conspire to create probable cause to believe an attack is coming." *Id.* at 198:4-199:18 (emphasis added). As Everett's testimony and report establish, every portion of his testimony regarding the use of deadly force by Braley is based on and inseparable from his articulation and application of constitutional principles.

Compounding these problems, Everett applied a Fourth Amendment standard contrary to Tenth Circuit precedent. In particular, contrary to *Weigel v. Broad*, 544 F.3d 1143, 1155 (10th Cir. 2008), Everett did not consider Braley's training, *see* Everett Depo. at 178:10-180:6, **Exhibit 5**, and contrary to *Allen v. Muskogee, Okl.*, 119 F.3d 837, 840-41 (10th Cir. 1997)*,* Everett states it is inappropriate to consider "[w]hat occurred in the time leading up to the moment that Agent Braley saw Davies on the fence," including actions by Braley that created the need to use deadly force, *see id.* at 203:23-204:9 and 205:9-24.

Everett's expert opinions on similar topics were excluded by the court in *McAtee v. Warkentin et al.*, No. 3:05-cv-0104-JAJA, slip op. at 7 (S.D. Iowa March 24, 2008), where the court ordered that Mr. Everett "will not be permitted to give testimony on the law of reasonable force or opine as to whether 'probable cause' existed for any particular action taken by" the individual defendant. *See* McAtee Order, **Exhibit 11**.

## IV.     Neither Experts' Testimony Will Assist the Trier of Fact

First, Spence and Everett intend to offer expert testimony regarding the subjective and internal mental state and processes of Braley and Davies. In particular, the concept of selective attention and the related concept of inattentional blindness are subjective mental reactions, which occur exclusively in a person's mind without any objective manifestation. *See*, *e.g.*, Spence Depo. at 190:14-17, **Exhibit 6**. Spence and Everett have both opined that discrepancies between what Braley reported hearing and seeing are explained by Braley's psychological and physiological reactions to high-stress, high-risk, and life-threatening events, and that Davies perceived certain things. *See* Spence Report at 6, 8-9, **Exhibit 1**; IRB Report at 2:77, **Exhibit 2**; Everett Report at 12-13, 14, **Exhibit 3**. These are improper opinions regarding the subjective mental state and mental processes of Braley and Davies, and seek to impermissibly bolster Braley's credibility and testimony. *See U.S. v. Adams*, 271 F.3d 1236, 1245 (10th Cir. 2001) ("[t]he credibility of witnesses is generally not an appropriate subject for expert testimony."); *Marlin v. Moody Nat'l Bank, N.A.*, 248 F. App'x 534, 541 (5th Cir.2007) (expert witnesses may not evaluate a party's state of mind).

In *Westcott v. Crinklaw*, 68 F.3d 1073, 1076 (8th Cir. 1995), the court held that a psychologist's testimony that a police officer was suffering from post-traumatic stress syndrome following a shooting, and that this syndrome oftentimes results in an officer

12

making incomplete, inaccurate, and misleading statements, "directly addressed the credibility of [the officer]". *Id.* at 1077. The court stated the psychologist's testimony "impermissibly bolstered" the officer's credibility "by providing a psychological explanation for [the officer's] varying accounts of the shooting." *Id.* As in *Westcott*, Spence and Everett impermissibly bolster Braley's credibility and provide "a psychological label or diagnosis as a way of excusing or justifying" Braley's statements. *Id.* at 1076. Each of Spence and Everett's opinions regarding selective attention and inattentional blindness is nothing more than a "psychological explanation" for Braley's "varying accounts of the shooting," and thus constitutes an impermissible attempt to "usurp the exclusive function of the jury to weigh the evidence and determine credibility." *Id.* at 1076.

Second, Spence and Everett's proffered opinions regarding selective attention and inattentional blindness relate to memory. *See* Spence Report at 6, **Exhibit 1**; Everett Depo. at 79:14-82:24, 160:3-19, 236:8-19, **Exhibit 5**. Generally, expert testimony regarding memory is improper. *See U.S. v. Affleck*, 776 F.2d 1451, 1458 (10th Cir. 1985) ("The average person is able to understand that people forget… The trial court properly refused to admit the testimony of appellant's expert witness."). In *Robertson v. McCloskey*, 676 F. Supp. 351, 354 (D.D.C. 1988) (citing *Affleck*) the court held that "[i]t is no secret that memory decreases over time, that individuals can selectively remember or even fabricate events, **or that stress can have an impact on memory or perception**." (emphasis added).

V.   **In the Alternative, Plaintiff Should be Permitted to Present Sur-Rebuttal Expert Testimony**

If the court determines that it is appropriate to admit the expert testimony of Spence and Everett on the occurrence of certain psychological and physiological concepts, it should in fairness permit Plaintiff to present sur-rebuttal expert testimony regarding the

same. *See GE Prolec Transformers, Inc. v. N. Am. Substation, L.L.C.*, No. 10–cv–01746–REB–MEH, 2011 WL 3159097, at *2-3 (D. Colo July 25, 2011) (allowing sur-rebuttal testimony to address concepts in "rebuttal" testimony that exceeded the scope of affirmative testimony). Spence and Everett have injected scientific concepts and issues regarding the sufficiency of scientific research into this case and Plaintiff's affirmative experts are not qualified to opine on or rebut such scientific and specialized testimony.

If Braley is permitted to present Spence and Everett's testimony regarding these scientific principles and research concepts Plaintiff will be unfairly prejudiced, as the jury will be presented with only one viewpoint on these scientific principles and research concepts, and this viewpoint will be endowed with the special designation of "expert" opinion testimony. The risk that the jury will interpret the lack of an opposing perspective as an indication that such opinions are infallible is high. Further, Spence and Everett's expert opinions rely heavily on prior research studies, the majority of which were improperly conducted and are unreliable. Cross examination of Spence and Everett on these studies will not be able to fully articulate the unreliable nature of these studies, as the experts themselves have no experience or expertise in proper scientific research design.

Consequently, Plaintiff offers Dr. Lisa Fournier as a sur-rebuttal expert witness. Plaintiff disclosed Dr. Fournier as an expert witness on December 20, 2015, and has provided Defendants with a full supplemental disclosure, including Dr. Fournier's declaration and report attached hereto as **Exhibit** 8**.** Dr. Fournier has education and experience regarding psychology, cognitive psychology, attention, perception, memory, research design, and the peer review process. *See* Fournier CV, **Exhibit 12**. In addition to

her experience as a professor of psychology, Dr. Fournier has written extensively and conducted peer reviewed studies regarding the areas at issue. *See id.* at 3.

## Conclusion

Based on the arguments above, Plaintiff seeks exclusion of opinions including, but not limited to, the following: **As to both experts:** (a) articulation and application of scientific concepts relating to action, perception, attention, and memory; (b) articulation and application of the concepts of selective attention, inattentional blindness, reflexive spine, the Colavita Effect, psychological refractory period, and other psychological and physiological concepts; (c) the reasonableness of Braley's not hearing or perceiving certain stimuli; (d) psychological or physiological explanations for Braley not hearing or perceiving certain stimuli; (e) whether a reasonable officer would have heard or perceived certain stimuli, based on psychological or physiological concepts; (f) opinions relating to the complexity and attention required to drive a vehicle and the application of selective attention while driving; (g) opinions on whether Davies' conduct caused him to be misidentified; (h) any schema or patterns relating to officer misidentification, (i) the mental state of Davies, Braley, or anyone else, including what they may have perceived; (j) opinions regarding action/reaction time, and (k) opinions derived from unreliable research or studies. **As to Everett:** (l) all opinions regarding use of force determinations; (m) what a reasonable officer would have perceived based on psychological or physiological concepts; and (n) opinions regarding task attention and timing relating to task completion. **As to Spence:** (o) opinions relating to "blue-on-blue" shootings, including those relating to Spence's survey study, the patterns that he derived, the application of certain patterns, or that Braley or Davies acted consistent with or inconsistent with such patterns or results.

WHEREFORE, Plaintiff respectfully requests that this Court issue an Order precluding Spence and Everett from offering the opinions discussed above, and that the court conduct a hearing on such matters.

        Respectfully submitted this 23rd day of December, 2015.

                /s/ Clayton E. Wire
                Murray Ogborn, #14508
                Thomas D. Neville, #35011
                Clayton E. Wire, #41717
                OGBORN MIHM, LLP
                1700 Broadway, Suite 1900
                Denver, Colorado 80290
                Phone: 303-592-5900
                Fax:    303-592-5910
                murray.ogborn@ogbornmihm.com
                thomas.neville@ogbornmihm.com
                clayton.wire@ogbornmihm.com
                *Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that a true copy of the above and foregoing was electronically filed with the Clerk of the United States District Court using the CM/ECF system and a served via CM/ECF or electronic mail upon the following, this 23rd day of December, 2015:

Thomas J. Lyons, Esq.
Andrew D. Ringel, Esq.
Christina Gunn, Esq.
Hall & Evans, LLC
1001 17th Street, Ste. 300
Denver, CO 80202
lyonst@hallevans.com
ringela@hallevans.com
gunnc@hallevans.com
***Attorneys for Defendants City of Lakewood and Police Chief Kevin Paletta***

Josh A. Marks, Esq.
Katherine M.L. Pratt, Esq.
Berg Hill Greenleaf & Ruscitti, LLP
1712 Pearl Street
Boulder, CO 80302
jam@bhgrlaw.com
kmlp@bhgrlaw.com
***Attorneys for Defendant Agent Devaney (D.J.) Braley***

Jonathan M. Abramson, Esq.
Kissinger & Fellman, P.C.
3773 Cherry Creek North Drive, Ste. 900
Denver, CO 80209
jonathan@kandf.com
***Attorney for Defendant Sgt. Michelle Current***

Timothy P. Schimberg
Fowler, Schimberg & Flanagan, P.C.
1640 Grant Street, Suite 150
Denver, Colorado 80203
t_schimberg@fsf-law.com
***Attorney for Defendant Sgt. Thomas Grady***

Timothy P. Cox
Lakewood City Attorney's Office
480 South Allison Parkway
Lakewood, CO 80226
tcox@wmcattorneys.com

                              */s/Renae Hyronimus*
                              _____
                              Renae Hyronimus